**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Email: cklee@leelitigation.com
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRITTNEY HERRERA, *on behalf of herself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

HERSHA HOSPITALITY TRUST,
HERSHA HOSPITALITY MANAGEMENT, L.P., and
26 ANN FB LLC,

Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff BRITTNEY HERRERA ("Plaintiff"), on behalf of herself and others similarly situated, by and through their undersigned attorneys, brings this Class and Collective Action Complaint against Defendants HERSHA HOSPITALITY TRUST and HERSHA HOSPITALITY MANAGEMENT, L.P. ("Defendants"), and alleges as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 et. seq. ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) liquidated damages; and (3) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unreimbursed costs for maintaining uniforms; (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.

3. Plaintiff further alleges that Defendants violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., when they threatened to deny Plaintiff and other similarly situated employees' access to leave if they complained about their employment conditions. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

4. Plaintiff further alleges that Defendants violated the NYLL § 196-B when they unlawfully placed conditions on the exercise and use of sick leave. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

5. Plaintiff further alleges, on behalf of herself, and others similarly situated that, Defendants violated New York City's Earned Safe and Sick Time Act ("ESSTA"), N.Y.C. Admin. Code §§ 20-911, et seq., when they unlawfully placed conditions on the exercise and use of sick leave. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, statutory penalties, and attorneys' fees and costs.

6. Plaintiff further alleges that Defendants deprived her of her statutory rights as a result of their discriminatory employment practices and that she is entitled to recover from them for discrimination on the basis of sex in violation of New York State Human Rights Law, New York Executive Law § 296 et seq. ("NYSHRL"), and New York City Human Rights Law,

Administrative Code of the City of New York § 8-107 ("NYCHRL"). She brings these claims to recover: (1) compensatory damages; (2) punitive damages; and (3) attorney's fees and costs.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

9. For all relevant periods, Plaintiff was a resident of Bronx County, New York.

10. Defendant HERSHA HOSPITALITY MANAGEMENT, L.P. is a global hospitality and management group which owns and operates the following hotels in New York City:

| Name | Address |
|---|---|
| AMTD Idea Tribeca Hotel | 39 Avenue of the Americas, New York, NY 10013 |
| Candlewood Suites New York City | 339 W 39th St., New York, NY 10018 |
| Chambers Hotel | 15 W 56th St., New York, NY 10019 |
| Fairfield Inn & Suites | 95 Henry St., New York, NY 10002 |
| Hampton Inn Madison Square | 116 W 31st St., New York, NY 10001 |
| Hampton Inn Manhattan/Chelsea | 108 W 24th St., New York, NY 10011 |
| Hampton Inn Times Square | 337 W 29th St., New York, NY 10018 |
| Hilton Brooklyn | 140 Schermerhorn St, Brooklyn, NY 11201 |
| Hilton Garden Inn Flushing | 33-71 Prince St, Flushing, NY 11354 |
| Hilton Garden Inn New York/Manhattan | 206 E 52nd St., New York, NY 10022 |
| Hilton Garden Inn Queens | 148-18 134th St, Jamaica, NY 11430 |
| Holiday Inn Express | 126 Water St., New York, NY 10005 |
| Holiday Inn Express Chelsea | 232 W 29th, New York, NY 10001 |
| Holiday Inn Express Wall Street | 126 Water St., New York, NY 10005 |
| Holiday Inn Express Times Square | 343 W 39th St., New York, NY 10018 |

| | |
|---|---|
| Holiday Inn New York City | 51 Nassau St., New York, NY 10038 |
| Hotel 48 Lex | 517 Lexington Ave., New York, NY 10017 |
| Hotel Aliz Time Square | 310W 40th St., New York, NY 10018 |
| Hyatt Union Square | 134 4th Ave., New York, NY 10003 |
| Little Something | 5 Platt St., New York, NY 10038 |
| Moxy NYC Downtown | 26 Ann St., New York, NY 10038 |

(collectively, the "Hotels").

11. All of the Hotels are operated as a single integrated enterprise, under the common ownership and control of Defendants. Specifically, the Hotels are engaged in related activities, share common ownership, and have a common business purpose:

a. All Hotels are engaged in the same business of operating hotels in New York City and across the country;

b. All Hotels are under the ownership and/or control of defendants. Specifically, Defendant HERSHA HOSPITALITY TRUST owns many of the Hotels and Defendant HERSHA HOSPITALITY MANAGEMENT, L.P. operates and manages each of the Hotels;

c. The entire enterprise is operated from a central office, located in Philadelphia. *See* **Exhibit A,** Defendants' Website.

d. Defendants have one team of executives who manage and set policy for all of the hotels. *See* **Exhibit B,** Defendants' Management Team Webpage;

e. Potential employees can apply to any of Defendants' locations through a single portal on their central website. *See* **Exhibit C,** Defendants' Hiring Webpage;

f. Employees can and are moved between locations as needed.

12. All Corporate Defendants are appropriately named in this action because the Hotels share identical illegal wage and hour policies and are under common ownership, management and

control. The Hotels and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the FLSA Collective Plaintiffs and Class Members whom the Plaintiff seeks to represent.

13. Defendant, HERSHA HOSPITALITY TRUST is a foreign business corporation organized under the laws of the State of Maryland, with a principal place of business located at 2001 Market St., Ste 3500, Philadelphia, PA 19103.

14. Defendant, HERSHA HOSPITALITY MANAGEMENT, L.P. is a foreign limited partnership, formed under the laws of the State of Pennsylvania, with a principal place of business located at 2001 Market St., Ste 3500, Philadelphia, PA 19103.

15. Defendant, 26 ANN FB LLC is a domestic limited liability company, formed under the laws of the State of New York, with a principal place of business located at 28 Beaver Hill Road, Elmsford, NY 10523.

16. At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

17. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

18. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including guest service agents, gallery hosts, breakfast attendants, house attendants, bartenders, attendants, and front desk agents, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

20. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages and overtime premiums, due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21. Plaintiff and FLSA Collective Plaintiffs were further the victims of Defendants' unlawful policies which mandated retaliation against employees who complained about their employment conditions by denying them leave owed under the FMLA.

22. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

23. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including guest service agents, gallery hosts, breakfast attendants, house attendants, bartenders, attendants, and front desk agents, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

24. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants'

records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

26. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' failure to pay all wages, including overtime wages and premiums, due to: (1) failure to reimburse uniform expenses, (2) failing to compensate safe and sick time pay pursuant to the NYLL, (3) failing to compensate safe and sick time pay pursuant to the ESSTA, (4) failing to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (5) failing to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

27. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

28. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect

retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e) Whether Defendants properly compensated Plaintiff and Class Members for all hours worked, including overtime;

f) Whether Defendants provided Plaintiff and Class Members with an adequate number of uniforms for each workweek;

g) Whether Defendants reimbursed Plaintiff and Class Members for all expenses incurred washing and maintaining their uniforms;

h) Whether Defendants improperly conditioned Plaintiff's and Class Members' use of safe and sick leave on the abdication of their rights under the NYLL and the ESSTA;

i) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

j) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

31. In or around October of 2021, Plaintiff was hired by Defendants to work as a front desk attendant at Defendants' Moxy NYC Downtown location, located at 26 Ann St., New York, NY 10038.

32. At all times during her employment with Defendants, Plaintiff was scheduled to work five days a week, Monday to Friday, from 3:00 p.m. to 11:00 p.m., for a total of forty (40) hours per week. In addition, on average once every other week, Plaintiff was required to work a sixth day consisting of an approximately twelve (12)-hour shift, from 11:00 a.m. to 11:00 p.m.

33. At all relevant times, Plaintiff was paid weekly by check. Plaintiff received a small raise or a few cents per hour each year that she worked. When her employment with Defendants ended, Plaintiff was paid at $21.14 per hour.

*Plaintiff's, FLSA Collective Plaintiffs', and Class Members' Wage and Hour Claims*

34. Plaintiff, FLSA Collective Plaintiffs, and Class Members were not paid for all hour worked.

35. At all relevant times, Plaintiff was scheduled to work the afternoon shift, ending at 11:00 p.m. However, due to Defendants' staffing struggles, her night shift replacement regularly arrived late. On nights when this happened, Defendants' manager would often intercept her on her way out of the building, after she had clocked out and require her to continue manning the front desk until the replacement had arrived. On these occasions, Plaintiff was not given the time to clock back in before returning to the front desk.

36. As a result of this practice, Plaintiff estimates that she was timeshaved approximately fifteen minutes, three times per week, for a total of about forty-five (45) minutes each week. Despite her protests and complaints to her manager, she was never paid for that time, nor did Defendants make any efforts to ensure that her replacement arrived on time.

37. At all times during her employment, Plaintiff was required to work through her thirty (30)-minute meal break as no employee was available to cover her shift. During these periods, Plaintiff continued performing work duties, including assisting customers at the front desk. Despite requiring Plaintiff to work through her meal breaks, Defendants required her to clock out for thirty (30) minutes for each such meal period.

38. Defendants knowingly and willfully operated their business with a policy and practice of time shaving Plaintiff, in violation of the FLSA and the NYLL.

*Plaintiff's and Class Members' Uniform Claims*

39. At all relevant times, Plaintiff and Class Members were required to wear uniforms while at work displaying the name and logo of the location they were working at. Although

Plaintiff was required to wear a uniform every day at work, Defendants only provided her with two shirts. Plaintiff was unable to come to work in a dirty uniform, so she had to launder her uniforms almost nightly. Although Plaintiff's uniforms could be washed with her other clothes, they required much more frequent washing than the rest of her wardrobe, resulting in Plaintiff incurring significantly higher laundry costs.

40. Although the extra laundry costs were the direct result of Defendants' failure to provide an adequate number of uniforms to Plaintiff, they did not reimburse Plaintiff for those costs.

41. Class Members were similarly provided with an inadequate number of uniforms for their schedule without proper compensation.

42. Defendants knowingly and willfully operated their business with a policy and practice of failing to reimburse Plaintiff and Class Members for expenses incurred in the care and maintenance of their uniforms.

*Plaintiff and Class Members' Leave Claims*

43. Defendants had frequent staffing issues which often led to complications with scheduling and compensation, as employees were called in suddenly or asked to work past their scheduled shifts. Plaintiff and other employees, including FLSA Collective Plaintiffs and Class Members, regularly complained about these issues to their managers and supervisors, especially when the scheduling issues impacted their pay. Defendants' managers greatly dislike this pattern of complaints.

44. Plaintiff complained to her manager, Brittany Pinter, about understaffing and expressed the need for additional assistance at the front desk. Brittany Pinter informed Plaintiff that employees were prohibited from complaining about their staffing and associated scheduling

and pay issues. Brittany Pinter further informed Plaintiff that the new policy would be that if employees complained they would be denied their PTO requests as well as any FMLA leave requests. Employees who did not complain would be able to take sick and family leave as normal.

45. Defendants violated Plaintiff's, FLSA Collective Plaintiffs', and Class Members' rights by: (i) interfering with the exercise of their rights under the FMLA, NYLL, and ESSTA; (ii) threatening them in response to a protected action; and (iii) unlawfully conditioning statutorily guaranteed rights. Plaintiff and other employees were prevented from taking safe, sick, and family leave in the manner guaranteed by law. Instead, they were forced to choose between one of two rights: the right to protest unfair and/or illegal employment practices, or the right to take their guaranteed leave.

46. Defendants knowingly and willfully operated their business with a policy and practice of illegally conditioning the use of any leave on Plaintiff, FLSA Collective Plaintiffs, and Class Members not complaining and withholding leave from those who did, in violation of the FMLA, NYLL, and ESSTA.

*Discrimination and Hostile Work Environment Claims*

47. During her employment with Defendants, Plaintiff was routinely subjected to sexual harassment by Defendants' Director, Justin [LNU], whenever she worked at Defendants' Moxy NYC Downtown. The harassment was directed toward Plaintiff because of her sex and created an uncomfortable and unwelcome working environment.

48. Throughout Plaintiff's employment, Justin [LNU] repeatedly made unsolicited and unwelcome comments about and discussed Plaintiff's physical appearance, including frequently and repeatedly telling her that she looked "pretty." His repeated remarks and discussions regarding her physical appearance were unwelcome and made Plaintiff feel extremely uncomfortable.

49. Plaintiff understood these remarks to be sexually inappropriate. She felt that Justin [LNU] was evaluating her appearance based on his personal preferences rather than any job-related considerations, and that his comments reflected a sexualized view of her rather than a professional one.

50. Justin [LNU]'s comments regarding Plaintiff's appearance reinforced Plaintiff's belief that his conduct extended beyond a normal employer-employee relationship. His repeated comments about Plaintiff's appearance created a hostile, intimidating, and offensive work environment.

51. Such incidents were part of Plaintiff's ordinary workday and caused Plaintiff continual anxiety and depression.

*Plaintiff's and Class Members' WTPA Claims*

52. At all relevant times, Defendants failed to provide Plaintiff and Class Members with proper wage statements. They also failed to provide them with proper wage notices.

53. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

54. New York Courts continue to find sufficient standing to support standing to support these claims. One such Court stated the following at summary judgment:

> Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide

> the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue.

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

55. Here, Defendants' conduct is has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual wage that they were paid as a result of Defendants' time shaving, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed all hours worked by Plaintiff and Class Members, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages were being unlawfully reduced.

56. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual wages, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

57. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

58. Plaintiff retains Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

59. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

60. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

61. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA. At all relevant times, Defendants willfully failed to fully compensate Plaintiff and FLSA Collective Plaintiffs as a result of their time shaving.

62. Records, if any, concerning the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

63. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

64. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

65. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

66. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving, and liquidated damages.

67. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

68. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

69. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

70. Defendants willfully violated Plaintiff's and Class Members' rights by failing to compensate them for all hours worked as a result of time shaving.

71. Defendants willfully violated Plaintiff's and Class Members' rights by failing to reimburse them for the cost of maintaining their uniforms.

72. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

73. Defendants willfully violated Plaintiff's and Class Members' rights by failing to allow them to take their sick leave in the manner contemplated by law, in violation of the NYLL.

74. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

75. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

76. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants: unpaid wages, including overtime, due to time shaving, unreimbursed costs for maintaining uniforms, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III

## INTERFERENCE AND RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

77. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

78. Section 2615(a) of the FMLA, states in pertinent part:

Interference with rights.

i. Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

> ii. Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

79. Defendants are subject to the FMLA as a covered employer. Defendants are covered employers because they employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar workweeks in the year preceding their violation of Plaintiff's , FLSA Collective Plaintiffs', and Class Members' rights under the FMLA. Defendants have more than thirty (30) employees and therefore meet FMLA standards.

80. Defendants interfered with of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' rights under the FMLA by threatening to deny their requests for leave if they continued complaining about their employment conditions.

81. Plaintiff, FLSA Collective Plaintiffs, and Class Members seek all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and cost.

**COUNT IV**

**VIOLATION OF THE EARNED SAFE AND SICK TIME ACT**

82. Plaintiff realleges and incorporates all of the foregoing paragraphs as if fully set forth herein.

83. At all relevant times, Defendants employed five or more employees and are employers covered within the meaning of N.Y.C Administrative Code § 20-913.

84. Defendants are required to give paid sick time to Plaintiff and Class Members, upon request. The ESSTA provides that:

> 1. All employers that employ five or more employees, all employers of one or more domestic workers, and any

> employer of four or fewer employees that had a net income of one million dollars or more during the previous tax year, shall provide paid safe/sick time to their employees in accordance with the provisions of this chapter. An employer shall pay an employee for paid safe/sick time at the employee's regular rate of pay at the time the paid safe/sick time is taken, provided that the rate of pay shall not be less than the highest applicable rate of pay to which the employee would be entitled pursuant to subdivision 1 of section 652 of the lab'r law, or any other applicable federal, state, or local law, rule, contract, or agreement. Such rate of pay shall be calculated without allowing for any tip credit or tip allowance set forth in any federal, state, or local law, rule, contract, or agreement.

ESSTA § 20-913(a).

85. Defendants willfully violated Plaintiff's and Class Members' rights by conditioning their use of leave on their abnegation of other statutorily protected rights.

86. Due to Defendants' ESSTA violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, punitive damages and attorneys' fees and costs.

**COUNT V**

**INTEFERENCE AND RETALIATION UNDER THE NEW YORK LABOR LAW**

87. Plaintiff realleges and incorporates all of the foregoing paragraphs as if fully set forth herein.

88. NYLL § 196-B(7) states, in pertinent part:

> "No employer or their agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee because such employee has exercised their rights afforded under this section…"

NYLL § 196-B(7).

89. Defendants willfully violated Plaintiff's and Class Members' rights by conditioning their use of leave on their abnegation of other statutorily protected rights and by threatening them with the loss of rights if they complained.

90. Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, punitive damages and attorneys' fees and costs.

**COUNT VI**

**DISCRIMINATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

91. Plaintiff realleges and incorporates all of the foregoing paragraphs as if fully set forth herein.

92. The New York State Human Rights Law ("NYSHRL") provides: "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." New York State Executive Law § 296(1)(a).

93. "Until fairly recently, the standard applicable to hostile work environment claims brought pursuant to the NYSHRL mirrored the federal standard. But on October 11, 2019, amendments to the NYSHRL came into effect that eliminated the 'severe and pervasive' standard. N.Y, Exec. Law § 300. The new standard requires a plaintiff allege that they were subjected to 'inferior terms, conditions or privileges of employment because of the individual's membership in one or more ... protected categories.' *Id.* This updated and more lenient standard is

similar to the standard for stating a hostile work environment claim under the NYCHRL, discussed below." *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, 2022 U.S. Dist. LEXIS 31075, *25-26 (S.D.N.Y. Feb. 22, 2022).

94. Defendants, through their Director, Justin [LNU], discriminated against Plaintiff in violation of NYSHRL by subjecting her to a hostile work environment on the basis of her sex.

95. Justin [LNU]'s conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under NYSHRL.

96. As a direct and proximate result of Justin [LNU]'s unlawful acts in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and relief, including punitive damages and attorney's fees.

## COUNT VII
## DISCRIMINATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW

97. Plaintiff realleges and incorporates all of the foregoing paragraphs as if fully set forth herein.

98. The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of sex, providing that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service, height, weight, or immigration or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

The New York City Administrative Code § 8-107(1)(a).

99. Plaintiff was an employee and qualified person within the meaning of NYCHRL and Defendants are covered employer under NYCHRL.

100. Defendants' Director, Justin [LNU]'s conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under NYCHRL.

101. Justin [LNU] discriminated against Plaintiff in violation of NYCHRL by subjecting her to a hostile work environment on the basis of her sex.

102. As a result of this unlawful employment practice, Plaintiff sustained injury, including but not limited to emotional distress.

103. Due to these violations under NYCHRL, Plaintiff is entitled to recover from Defendants: (1) compensatory damages; (2) punitive damages; and (3) attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a) A declaratory judgment that the practices complained of herein are unlawful under the FLSA, FMLA, NYLL, and the ESSTA;

b) An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c) An award of unpaid wages, including overtime compensation as a result of time shaving due under the FLSA and NYLL;

d) An award of unpaid wages due to Defendants' failure to reimburse for the cost for maintaining their uniforms under the NYLL;

e) An award of statutory penalties as a result of Defendants' failure to comply with the wage notice and wage statement requirements of the NYLL;

f) An award of backpay, compensatory damages, and punitive damages due under the ESSTA;

g) An award of backpay, compensatory damages, and punitive damages due under the NYLL;

h) An award of backpay, compensatory damages, and punitive damages due under the FMLA;

i) An award of compensatory damages for Plaintiff's emotional suffering as a result of Defendants' unlawful discriminatory practices, pursuant to NYSHRL and NYCHRL;

j) An award of punitive damages for Defendants' unlawful discriminatory practices, pursuant to NYSHRL, and NYCHRL;

k) An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

l) An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

m) An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

n) Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o) Designation of this action as a class action pursuant to F.R.C.P. 23;

p) Designation of Plaintiff as Representative of the Class and Subclass; and

q) Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: November 25, 2026

Respectfully submitted,

By: */s/ C.K. Lee*
C.K. Lee, Esq. (CL 4086)

**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: 212-465-1188
Email: cklee@leelitigation.com
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*